No. 22-50365

# United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff–Appellee,*

*v.*

CALEB BRYANT HICKCOX,

*Defendant–Appellant.*

Appeal from the United States District Court
for the Western District of Texas
No. 7:21-CR-361-DC

## APPELLEE'S BRIEF FOR THE UNITED STATES

JAIME ESPARZA
United States Attorney

CHARLES E. FOWLER, JR.
Assistant United States Attorney
Western District of Texas
903 San Jacinto, Suite 334
Austin, Texas 78701
Phone: (512) 370-1265
Fax: (512) 916-5854

## RECOMMENDATION ON ORAL ARGUMENT

Oral argument is unneeded. The briefs and record adequately present the facts and arguments, and oral argument would not significantly help this Court decide the case. *See* Fed. R. App. P. 34(a)(2)(C).

## TABLE OF CONTENTS

RECOMMENDATION ON ORAL ARGUMENT ............................. i

TABLE OF CONTENTS ....................................................... ii

TABLE OF AUTHORITIES ................................................. iv

JURISDICTION ................................................................ 1

STATEMENT OF THE ISSUES ............................................. 1

STATEMENT OF THE CASE ............................................... 1

    I.    Hickcox shot a gun several times inside an apartment. ............ 1

    II.   Hickcox pled guilty to being a felon in possession of a gun ................................................................................. 2

    III.  The district court sentenced Hickcox to 63 months' imprisonment. ...................................................................... 3

SUMMARY OF THE ARGUMENT ........................................... 4

ARGUMENT ................................................................... 5

    I.    The district court did not plainly err by not holding that § 922(g)(1) is unconstitutional. ............................................... 5

        A.   Section 922(g)(1) does not plainly violate the Second Amendment. ................................................................ 6

            1.   The lack of precedent supporting Hickcox's claim—and unanimous case law rejecting it— defeat a plain-error finding. ..................................... 7

            2.   *Bruen* did not unequivocally overrule this Court's precedent holding that § 922(g)(1) does not violate the Second Amendment. ...................... 10

            3.   Even applying *Bruen*'s framework, § 922(g)(1) does not violate the Second Amendment. .............. 13

B.    Precedent forecloses Hickcox's claim that § 922(g)(1) exceeds Congress's power under the Commerce Clause. ........................................................................28

II.    Hickcox's sentence is substantively reasonable. .....................28

CONCLUSION ................................................................. 31

CERTIFICATE OF SERVICE ................................................. 32

CERTIFICATE OF COMPLIANCE ........................................... 32

## TABLE OF AUTHORITIES

## Cases

*Barrett v. United States,*
   423 U.S. 212 (1976)..........................................................................27

*District of Columbia v. Heller,*
   554 U.S. 570 (2008)................................................................passim

*Holguin-Hernandez v. United States,*
   140 S. Ct. 762 (2020) ........................................................................34

*In re Bonvillian Marine Serv., Inc.,*
   19 F.4th 787 (5th Cir. 2021) ..................................................... 12, 15

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010).........................................................................15

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &*
   *Explosives,*
      700 F.3d 185 (5th Cir. 2012)................................................24, 28, 29

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
   142 S. Ct. 2111 (2022) ............................................................passim

*Range v. Att'y Gen. United States,*
   53 F.4th 262 (3d Cir. 2022) ......................................................passim

*Robertson v. Baldwin,*
   165 U.S. 275 (1897)..........................................................................14

*United States v. Alcantar,*
   733 F.3d 143 (5th Cir. 2013)............................................................28

*United States v. Anderson,*
   559 F.3d 348 (5th Cir. 2009)............................................................11

*United States v. Avila,*
   No. 22-50088, 2022 WL 17832287 (5th Cir. Dec. 21, 2022)............... 8

*United States v. Connelly,*
   2022 WL 17829158 (W.D. Tex. Dec. 21, 2022) .................................12

*United States v. Darrington,*
   351 F.3d 632 (5th Cir. 2003)...................................................... 11, 13

iv

*United States v. Diehl*,
   775 F.3d 714 (5th Cir. 2015)............................................................31

*United States v. Emerson*,
   270 F.3d 203 (5th Cir. 2001)............................................................11

*United States v. Evans*,
   587 F.3d 667 (5th Cir. 2009)............................................................ 7

*United States v. Everist*,
   368 F.3d 517 (5th Cir. 2004)............................................................11

*United States v. Gonzalez*,
   2022 WL 4376074 (7th Cir. Sept. 22, 2022) ...................................... 8

*United States v. Grant*,
   2022 WL 16541138 (D.S.C. Oct. 28. 2022)............................ 9, 14, 19

*United States v. Grinage*,
   2022 WL 17420390 (W.D. Tex. Dec. 5, 2022)................. 12, 13, 23, 28

*United States v. Hill*,
   35 F.4th 366 (5th Cir. 2022) ............................................................ 7

*United States v. Howard*,
   766 F.3d 414 (5th Cir. 2014)............................................................ 6

*United States v. Hudgens*,
   4 F.4th 352 (5th Cir. 2021) .............................................................29

*United States v. Kelly*,
   2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022)..............................21

*United States v. Mares*,
   402 F.3d 511 (5th Cir. 2005)............................................................11

*United States v. Massey*,
   849 F.3d 262 (5th Cir. 2017)..................................................... 11, 28

*United States v. Nguyen*,
   854 F.3d 276 (5th Cir. 2017)...............................................19, 29, 30

*United States v. Perryman*,
   965 F.3d 424 (5th Cir. 2020)...........................................................28

*United States v. Ramirez*,
   37 F.4th 233 (5th Cir. 2022) ............................................................ 7

*United States v. Redmond*,
   965 F.3d 416 (5th Cir. 2020)......................................................29, 31

*United States v. Rene E.*,
   583 F.3d 8 (1st Cir. 2009).................................................................27

*United States v. Scroggins*,
   599 F.3d 433 (5th Cir. 2010)...........................................................13

*United States v. Smith*,
   417 F.3d 483 (5th Cir. 2005)...........................................................31

*United States v. Stockman*,
   947 F.3d 253 (5th Cir. 2020)............................................................ 7

*United States v. Vongxay*,
   594 F.3d 1111 (9th Cir. 2010).....................................................19, 26

*United States v. Young*,
   2022 WL 16829260 (W.D. Pa. Nov. 7, 2022) .................................9, 18

*United States v. Zarco-Beiza*,
   24 F.4th 477 (5th Cir. 2022) ...........................................................29

## Statutes

18 U.S.C. § 3231 ..................................................................................... 1

18 U.S.C. § 3553 .................................................................4, 29, 30, 31

18 U.S.C. § 3742 ..................................................................................... 1

18 U.S.C. § 922 ...........................................................................1, 2, 4, 10

18 U.S.C. § 924...................................................................................... 2

28 U.S.C. § 1291 .................................................................................... 1

## Other Authorities

Tex. Penal Code § 71.02........................................................................ 2

U.S.S.G. § 2K2.1.................................................................................... 3

U.S.S.G. § 3E1.1.................................................................................... 3

**Rules**

Fed. R. App. P. 4 ..................................................................... 1

Fed. R. App. P. 32 ...............................................................17

Fed. R. App. P. 34 .................................................................. i

Fed. R. Crim. P. 51 .............................................................14

Fed. R. Crim. P. 52 ............................................................. 6

## JURISDICTION

Hickcox appeals the final judgment in a criminal case. (ROA.41–46.) The district court had jurisdiction under 18 U.S.C. § 3231. Hickcox timely noticed this appeal. (ROA.47.) *See* Fed. R. App. P. 4(b)(1)(A)(i). This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

While high on narcotics, Hickcox shot a handgun several times inside an apartment. He pled guilty to possessing a gun after being convicted of a felony. *See* 18 U.S.C. § 922(g)(1). Emphasizing the unusual facts and the grave danger Hickcox created, the district court varied upward from the guidelines range and sentenced him to 63 months' imprisonment.

    I.    Does § 922(g)(1) plainly violate the Second Amendment?

    II.    Is Hickcox's sentence substantively unreasonable?

## STATEMENT OF THE CASE

### I.    Hickcox shot a gun several times inside an apartment.

This case vividly illustrates why guns and drugs do not mix. Hickcox was at the apartment of Marcella Martinez and her 17-year-old son, Jose Vasquez. (ROA.75, 93.) Hickcox was purportedly there to protect Martinez because they thought unidentified foes were after her. (ROA.88, 93.) Hickcox, Martinez, and Vasquez "were all using an unknown narcotic substance and getting high in the living room." (ROA.94; *see* ROA.79, 89.)

Sometime late that night, Hickcox shot a .380 pistol several times in the living room. (ROA.88–89, 93.) The gunshots woke Martinez, who saw

1

Hickcox holding the gun and looking "delusional and paranoid." (ROA.88, 93.) A struggle ensued between Hickcox and Martinez, and Hickcox "punched [Martinez] multiple times." (ROA.93.) Martinez and Vasquez then left the apartment to find help. (ROA.93.) Hickcox was somehow shot in the right forearm (ROA.89, 94); the record does not explain how.

Hickcox told police that he shot the gun because he saw lights shine through the living-room windows and "panicked," thinking the people who were after Martinez were trying to break in. (ROA.89, 94.) He also "reported seeing laser beams in the living room." (ROA.94.) Martinez and Vasquez claimed they had never seen the gun before. (ROA.88, 93.) Hickcox claimed, however, that Martinez first had the gun and gave it to Vasquez, and that Hickcox then took it from Vasquez. (ROA.79–80, 89, 94.)

Hickcox had previously been convicted in state court of engaging in organized crime, a felony. (ROA.94, 96–97.) *See* Tex. Penal Code § 71.02.

## II.    Hickcox pled guilty to being a felon in possession of a gun.

Hickcox was charged with being a felon in possession of a gun. (ROA.15.) *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). He pled guilty. (ROA.38–39, 66.)

### III. The district court sentenced Hickcox to 63 months' imprisonment.

The PSR started with a base offense level of 14. (ROA.95.) *See* U.S.S.G. § 2K2.1(a)(6). It added two levels because the gun Hickcox possessed was reported stolen; it subtracted three levels for acceptance of responsibility. (ROA.95.) *See* U.S.S.G. §§ 2K2.1(b)(4)(A), 3E1.1. Hickcox's criminal history placed him in category III. (ROA.96–97.) His offense level and criminal-history category produced a guidelines range of 18 to 24 months. (ROA.102.)

Neither side objected to the PSR (ROA.72–73, 105), and the district court adopted it (ROA.73). But the court varied upward from the guidelines range "considering the entirety of the case," including Hickcox's criminal history and, "most importantly, the facts and circumstances of this case." (ROA.81.) The court explained that this is not "just a basic, run-of-the-mill" felon-in-possession case. (ROA.82–83.) Rather, Hickcox created "a dangerous, dangerous situation." (ROA.82.) Hickcox "admitted to discharging the firearm several times toward the direction of the bedrooms," and the bullets could have "easily penetrate[d] those walls." (ROA.82.) The court also noted that Hickcox was "using narcotics." (ROA.83.) Hickcox thus "posed a significant threat of death or serious bodily injury" to Martinez, Vasquez, those in the surrounding apartments, and himself. (ROA.83.)

The court sentenced Hickcox to 63 months' imprisonment. (ROA.42, 85.) That above-guidelines sentence was needed, the court explained, to

3

protect the community and "due to the nature and circumstances of the offense, the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment." (ROA.83.) *See* 18 U.S.C. § 3553(a)(1), (2)(A), (2)(C).

## SUMMARY OF THE ARGUMENT

**I.A.** Hickock's plain-error Second Amendment challenge fails for three reasons:

First, this Court generally finds no plain error absent controlling authority. But neither the Supreme Court nor this Court has held that § 922(g)(1) violates the Second Amendment under *Bruen*'s framework. And a wall of persuasive authority—including a precedential Third Circuit opinion and more than 60 district-court decisions—uniformly holds otherwise.

Second, the district court did not err—plainly or otherwise—because this Court's precedent forecloses Hickcox's Second Amendment challenge. Before *Bruen*, this Court repeatedly held that § 922(g)(1) does not violate the Second Amendment. To reach that conclusion, this Court determined the Second Amendment's "original scope" "based on its historical meaning." Thus, although *Bruen* rejected means-end scrutiny and clarified that the proper Second Amendment framework is textual and historical, it did not overrule this Court's pre-*Bruen* § 922(g)(1) precedents—let alone unequivocally. This Court remains bound by them.

4

Third, even applying *Bruen*'s framework, § 922(g)(1) is constitutional for two reasons. First, the Second Amendment's text covers only law-abiding, responsible citizens and thus excludes convicted felons like Hickcox. Second, § 922(g)(1) is consistent with the nation's historical tradition of categorically disarming dangerous or untrustworthy people.

**I.B.** As Hickcox concedes, this Court's precedent forecloses his claim that § 922(g)(1) exceeds Congress's power under the Commerce Clause.

**II.** Hickcox's sentence is substantively reasonable. Hickcox claims only that the district court lacked an adequate reason to sentence him above the guidelines range. But the court articulated ample case-specific reasons for the sentence that the guidelines did not account for. The court recognized that this is no ordinary felon-in-possession case. It emphasized that, by combining guns and drugs in an occupied apartment, Hickcox created a grave danger of death or serious injury to everyone nearby. This Court has affirmed upward variances of similar magnitude when the facts warranted them and should do the same here.

ARGUMENT

## I.  The district court did not plainly err by not holding that § 922(g)(1) is unconstitutional.

Section 922(g)(1) neither violates the Second Amendment nor exceeds Congress's power under the Commerce Clause. Hickcox's constitutional challenges thus fail.

5

Because Hickcox raises these challenges for this first time on appeal, this Court reviews them for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014). "Plain error exists if (1) there is an error, (2) the error is plain, (3) the error affects substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Howard*, 766 F.3d at 419 (cleaned up).

### A.    Section 922(g)(1) does not plainly violate the Second Amendment.

Hickcox's Second Amendment challenge fails. (Def. Br. 13–18.) The Supreme Court recently clarified that courts considering Second Amendment challenges should not apply means-end scrutiny. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). In doing so, however, it did not address any law restricting convicted felons' gun rights. Because neither *Bruen* nor any other controlling precedent holds § 922(g)(1) unconstitutional, Hickcox cannot show plain error. Indeed, this Court's pre-*Bruen* precedent—which *Bruen* did not overrule—forecloses Hickcox's claim. Finally, even applying *Bruen*'s analytical framework, § 922(g)(1) is constitutional both because the Second Amendment's text does not cover convicted felons and because § 922(g)(1) squares with the nation's historical tradition of gun regulation.

1.    **The lack of precedent supporting Hickcox's claim—and unanimous case law rejecting it—defeat a plain-error finding.**

First off, Hickcox cannot meet the second plain-error prong. Error is "plain" only if it is "clear or obvious, rather than subject to reasonable dispute." *United States v. Ramirez*, 37 F.4th 233, 235 (5th Cir. 2022). This Court "ordinarily do[es] not find plain error when [it has] not previously addressed an issue." *United States v. Evans*, 587 F.3d 667, 671 (5th Cir. 2009) (quotation marks omitted). "Even where the argument requires only extending authoritative precedent, the failure of the district court to do so cannot be plain error." *Id.* (quotation marks omitted). Thus, a "lack of binding authority is often dispositive in the plain-error context." *United States v. Hill*, 35 F.4th 366, 396 (5th Cir. 2022) (quotation marks omitted); *see also United States v. Stockman*, 947 F.3d 253, 260 (5th Cir. 2020) (explaining "that an error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results" (quotation marks omitted)).

Any error here cannot be plain because no Supreme Court or Fifth Circuit case holds that § 922(g)(1) violates the Second Amendment. *Bruen*—the basis for Hickcox's challenge—addressed a New York licensing law amounting to a total ban of public carry, subject only to case-by-case executive discretion. *See* 142 S. Ct. at 2123. *Bruen* did not address a criminal law prohibiting felons from possessing guns. *See Range v. Att'y Gen. United States*, 53 F.4th 262, 271 (3d Cir. 2022) (noting that "*Bruen* did

7

not address" § 922(g)(1)'s constitutionality); *see also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm."); *id.* at 2162 (Kavanaugh, J., concurring) (reiterating *Heller* and *McDonald*'s statements about felons). Thus, as this Court recently recognized, the kind of argument Hickcox makes would require extending *Bruen*'s holding. *See United States v. Avila*, No. 22-50088, 2022 WL 17832287, at *2 (5th Cir. Dec. 21, 2022) (unpublished) (declining to extend *Bruen*'s holding to 18 U.S.C. § 922(n)—prohibiting receipt of guns by people under felony indictment—on plain-error review). That "is not consonant with a finding of plain error." *Id.*

What is more, a large body of persuasive authority uniformly rejects Hickcox's argument. The only circuit precedent to analyze § 922(g)(1) post-*Bruen* held that the Second Amendment does not cover convicted felons and that, even if it did, § 922(g)(1) squares with the nation's historical tradition of gun regulation. *Range*, 53 F.4th at 282–85; *see also United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074, at *2 (7th Cir. Sept. 22, 2022) (agreeing with counsel's *Anders* brief that "it would be frivolous to argue that § 922(g)(1) is unconstitutional as applied to" a violent felon). More than sixty post-*Bruen* district-court decisions (and counting) also unanimously hold that § 922(g)(1) does not violate the Second Amendment.[1]

---

[1] *See United States v. Fencl*, No. 3:21-cr-3101, Dkt. No. 81 (S.D. Cal. Dec. 7, 2022); *United States v. Perez-Garcia*, No. 3:22-cr-1581, Dkt. No. 70 (S.D. Cal. Dec. 6, 2022); *United States v. Walker*, No. 2:19-cr-234, Dkt. No. 83 (E.D. Cal. Dec. 6, 2022); *United States v. Grinage*, No. 5:21-cr-399, Dkt. No. 51, 2022 WL 17420390 (W.D. Tex. Dec. 5, 2022); *United States v. Wagoner*,

No. 4:20-cr-18, Dkt. No. 262, 2022 WL 17418000 (W.D. Va. Dec. 5, 2022); *United States v. Gay*, No. 4:20-cr-40026, Dkt. No. 412 (C.D. Ill. Dec. 5, 2022); *United States v. Glaze*, No. 5:22-cr-425, Dkt. No. 23 (W.D. Okla. Dec. 1, 2022); *United States v. Ford*, No. 4:21-cr-179, Dkt. No. 52, 2022 WL 17327499 (W.D. Mo. Nov. 29, 2022); *United States v. Jones*, No. 4:20-cr-354, Dkt. No. 78, 2022 WL 17327498 (W.D. Mo. Nov. 29, 2022); *United States v. Jacobs*, No. 2:22-cr-160, Dkt. No. 28 (C.D. Cal. Nov. 28, 2022); *United States v. Cage*, No. 3:21-cr-68, Dkt. No. 41, 2022 WL 17254319 (S.D. Miss. Nov. 28, 2022); *United States v. Willis*, No. 1:22-cr-186, Dkt. No. 36 (D. Colo. Nov. 23, 2022); *United States v. Teerlink*, No. 2:22-cr-24, Dkt. No. 33, 2022 WL 17093425 (D. Utah Nov. 21, 2022); *United States v. Nixon*, No. 3:22-cr-149 (S.D. Cal. Nov. 18, 2022); *United States v. Hill*, No. 4:22-cr-249, Dkt. No. 42 (S.D. Tex. Nov. 17, 2022); *United States v. Blackburn*, No. 1:22-cr-209, Dkt. No. 28 (M.D. Pa. Nov. 17, 2022); *United States v. Mitchell*, No. 1:22-cr-111, Dkt. No. 43 (S.D. Ala. Nov. 17, 2022); *United States v. Dumont*, No. 1:22-cr-53 (D.N.H. Nov. 14, 2022); *United States v. Baker*, No. 2:20-cr-301, Dkt. No. 179, 2022 WL 16855423 (D. Utah Nov. 10, 2022); *United States v. Carpenter*, No. 1:21-cr-86, Dkt. No. 38, 2022 WL 16855533 (D. Utah Nov. 10, 2022); *United States v. Moore*, No. 2:21-cr-121, Dkt. No. 81 (W.D. Pa. Nov. 9, 2022); *United States v. Reese*, No. 2:19-cr-257, Dkt. No. 193 (W.D. Pa. Nov. 8, 2022); *United States v. Young*, No. 2:22-cr-54, Dkt. No. 47 (W.D. Pa. Nov. 7, 2022); *United States v. Butts*, No. 9:22-cr-33, Dkt. No. 33 (D. Mont. Oct. 31, 2022); *United States v. Burton*, No. 3:22-cr-362, Dkt. No. 48 (D. S.C. Oct. 28, 2022); *United States v. Carleson*, No. 3:22-cr-32, Dkt. No. 39 (D. Ak. Oct. 28, 2022); *United States v. Grant*, No. 3:22-cr-161, Dkt. No. 44, 2022 WL 16541138 (D. S.C. Oct. 28, 2022); *United States v. Law*, No. 2:20-cr-341, Dkt. No. 60 (W.D. Pa. Oct. 27, 2022); *United States v. Borne*, No. 1:22-cr-83, Dkt. No. 35 (D. Wyo. Oct. 24, 2022); *United States v. Minter*, No. 3:22-cr-135, Dkt. No. 33 (M.D. Pa. Oct. 18, 2022); *United States v. Raheem*, No. 3:20-cr-61, Dkt. No. 389, 2022 WL 10177684 (W.D. Ky. Oct. 17, 2022); *United States v. Ridgeway*, No. 3:22-cr-175, Dkt. No. 32, 2022 WL 10198823 (S.D. Cal. Oct. 17, 2022); *United States v. Trinidad*, No. 3:21-cr-398, Dkt. No. 99, 2022 WL 10067519 (D.P.R. Oct. 17, 2022); *United States v. Carrero*, No. 2:22-cr-30, Dkt. No. 50, 2022 WL 9348792 (D. Utah Oct. 14, 2022); *United States v. Kimura*, No. 3:21-cr-2503, Dkt. No. 91 (S.D. Cal. Oct. 14, 2022); *United States v. Riley*, No. 1:22-cr-163, Dkt. No. 37, 2022 WL 7610264 (E.D. Va. Oct. 13, 2022); *United States v. King*, No. 7:21-cr-255, Dkt. No. 50, 2022 WL 5240928 (S.D.N.Y. Oct. 6, 2022); *United States v. Daniels*, No. 1:03-cr-83, Dkt. No. 69, 2022 WL 5027574 (W.D.N.C. Oct. 4, 2022); *United States v. Charles*, No. 7:22-cr-154, Dkt. No. 48, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022); *United States v. Williams*, No. 3:21-cr-478, Dkt. No. 76 (S.D. Cal. Sept. 30, 2022); *United States v. Campbell*, No. 5:22-cr-138, Dkt. No. 64 (W.D. Okla. Sept. 27, 2022); *United States v. Siddoway*, No. 1:21-cr-205, Dkt. No. 54, 2022 WL 4482739 (D. Idaho Sept. 27, 2022); *United States v. Perez*, No. 3:21-cr-508,

Hickcox can hardly say that § 922(g)(1) clearly or obviously violates the Second Amendment under *Bruen*'s framework when dozens of federal judges have unanimously concluded otherwise.

**2.  *Bruen* did not unequivocally overrule this Court's precedent holding that § 922(g)(1) does not violate the Second Amendment.**

Hickcox can also show no error—plain or otherwise—because this Court's precedent forecloses his argument that § 922(g)(1) violates the Second Amendment, and *Bruen* did not overrule that precedent. Under the rule of orderliness, "one panel of [this] court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *In re*

Dkt. No. 78 (S.D. Cal. Sept. 26, 2022); *United States v. Collette*, No. 7:22-cr-141, Dkt. No. 66, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022); *United States v. Delpriore*, No. 3:18-cr-136, Dkt. No. 287 (D. Ak. Sept. 23, 2022); *United States v. Coombes*, No. 4:22-cr-189, Dkt. No. 39, 2022 WL 4367056 (N.D. Okla. Sept. 21, 2022); *United States v. Hill*, No. 3:21-cr-107, Dkt. No. 70, 2022 WL 4361917 (S.D. Cal. Sept. 20, 2022); *United States v. Rojo*, No. 3:21-cr-682, Dkt. No. 50 (S.D. Cal. Sept. 14, 2022); *United States v. Cockerham*, No. 5:21-cr-6, Dkt. No. 31 (S.D. Miss. Sept. 13, 2022); *United States v. Jackson*, No. 0:21-cr-51, Dkt. No. 114, 2022 WL 4226229 (D. Minn. Sept. 13, 2022); *United States v. Havins*, No. 3:21-cr-1515, Dkt. No. 62 (S.D. Cal. Sept. 12, 2022); *United States v. Patterson*, No. 7:19-cr-231 (S.D.N.Y. Sept. 9, 2022); *United States v. Doty*, No. 5:21-cr-21, Dkt. No. 34 (N.D. W.Va. Sept. 9, 2022); *United States v. Burrell*, No. 3:21-cr-20395, Dkt. No. 34, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022); *United States v. Randle*, No. 3:22-cr-20, Dkt. No. 34 (S.D. Miss. Sept. 6, 2022); *United States v. Ingram*, No. 0:18-cr-557, Dkt. No. 1714, 2022 WL 3691350 (D. S.C. Aug. 25, 2022); *United States v. Nevens*, No. 2:19-cr-774, Dkt. No. 121 (C.D. Cal. Aug. 15, 2022); *United States v. Farris*, No. 1:22-cr-149, Dkt. No. 29 (D. Colo. Aug. 12, 2022); *United States v. Adams*, No. 1:20-cr-628 (S.D.N.Y. Aug. 10, 2022); *United States v. Ramos*, No. 2:21-cr-395, Dkt. No. 31 (C.D. Cal. Aug. 5, 2022); *United States v. Maurice*, No. 7:22-cr-48 (S.D.N.Y. Jul. 14, 2022).

*Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021). "This rule is strict and rigidly applied." *Id.* "Thus, for a Supreme Court decision to change [this] Circuit's law, it must be more than merely illuminating with respect to the case before the court and must unequivocally overrule prior precedent." *Id.* (brackets and internal quotation marks omitted).

This Court first faced a Second Amendment challenge to § 922(g)(1) in *United States v. Darrington*, 351 F.3d 632 (5th Cir. 2003). It explained that although the Second Amendment protects individual rights, "that does not mean that those rights may never be made subject to any limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country." *Id.* at 633–34 (quoting *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001)). The Court concluded "that legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment." *Id.* at 634; *see also United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004) (same).

This Court has repeatedly recognized that *Darrington* and *Everist* foreclose Second Amendment challenges to § 922(g)(1). *See United States v. Massey*, 849 F.3d 262, 265 (5th Cir. 2017); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009); *United States v. Mares*, 402 F.3d 511, 516 (5th Cir. 2005). In

11

*Anderson*, this Court "reaffirm[ed] *Darrington* and the constitutionality of § 922(g)" following the Supreme Court's landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *See* 559 F.3d at 352. It pointed to the Supreme Court's assurance that it was casting no "doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 352 n.6 (quoting *Heller*, 554 U.S. at 626).

*Bruen* did not unequivocally overrule these precedents. As noted, *Bruen* did not address status-based criminal laws like § 922(g)(1). *Bruen*'s broadest holding was that means-end scrutiny—applied at "step two" of many circuits' pre-*Bruen* frameworks—was "inconsistent with *Heller*'s historical approach." 142 S. Ct. at 2129. But, *Bruen* explained, those circuits' "step one"—at which they "ascertain[ed] the original scope of the right based on its historical meaning"—was "broadly consistent with *Heller*." *Id.* at 2126–27. Thus, *Bruen* did not disturb precedents analyzing the Second Amendment's historical scope. *See Range*, 53 F.4th at 285 (relying on "pre-*Bruen* jurisprudence concerning the historical justification for stripping felons of Second Amendment rights" (cleaned up)); *United States v. Connelly*, No. EP-22-CR-229(2)-KC, 2022 WL 17829158, at *3 (W.D. Tex. Dec. 21, 2022) (concluding that "*Bruen* did not clearly abrogate" this Court's precedents applying historical analysis to uphold § 922(g)(3)); *United States v. Grinage*, No. SA-21-CR-00399-JKP, 2022 WL 17420390, at *2 (W.D. Tex. Dec. 5, 2022) ("[T]o the extent pre-*Bruen* cases relied on

12

textual and historical analysis to find firearms restrictions constitutional, those cases are still good law.").

This Court's pre-*Bruen* precedents analyzed whether § 922(g)(1) infringed the Second Amendment right "as historically understood in this country." *See Darrington*, 351 F.3d at 633–34. They did not apply the means-end test that *Bruen* rejected. So *Bruen* did not overrule this Court's precedents—let alone "unequivocally." *See Bonvillian*, 19 F.4th at 792. *Darrington* and the cases following it remain good law, *see Grinage*, 2022 WL 17420390, at *2, and a panel of this Court may not overturn them.

### 3.    Even applying *Bruen*'s framework, § 922(g)(1) does not violate the Second Amendment.

In *Bruen*, the Supreme Court struck down New York's "may-issue" licensing law, which allowed the executive to issue a license for public carry only on a showing of "proper cause." 142 S. Ct. at 2123. The Court clarified that means-end scrutiny is inconsistent with its Second Amendment precedents. *Id.* at 2127–29. It said: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129–30. Applying that framework here, § 922(g)(1) does not violate the Second Amendment.

a.    **The Second Amendment's plain text does not cover convicted felons.**

The Second Amendment codified a preexisting understanding of the right to bear arms as covering only law-abiding, responsible citizens. Convicted felons are, by definition, not law-abiding—having admitted or been found guilty of committing serious crimes. The Second Amendment's scope thus excludes them.

The Second Amendment does not cover all citizens. "[L]ike the First and Fourth Amendments, [it] codified a *pre-existing* right," neither "granted by the Constitution" nor "dependent upon that instrument for its existence." *Heller*, 554 U.S. at 592; *see also id.* at 599 (explaining that "the Second Amendment was not intended to lay down a 'novel princip[e]' but rather codified a right 'inherited from our English ancestors'" (quoting *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897)). So the right to bear arms is "enshrined with the scope [it was] understood to have when the people adopted [it]." *Id.* at 634–35.

"The founders understood that not everyone possessed Second Amendment rights." *Range*, 53 F.4th at 271 (brackets omitted). And while *Heller* did not exhaustively analyze "the full scope of the Second Amendment," it explained that the Second Amendment is "not unlimited" and noted some limits that have always been understood to bound the right. 554 U.S. at 626. The Court identified "presumptively lawful regulatory measures," including the "longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626–27 & n.26; *see also*

14

*McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (repeating *Heller*'s "assurances" about restrictions on felons and the mentally ill). The Second Amendment's scope excludes felons because it codified a "right of law-abiding, responsible citizens." *See Heller*, 554 U.S. at 635.

*Bruen* confirmed that a person's status as a felon counts at its first, textual step. Echoing *Heller*, the Court explicitly, repeatedly described the right as belonging only to law-abiding citizens. *See, e.g.*, *Bruen*, 142 S. Ct. at 2122 (stating that *Heller* "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense"); *id.* at 2131 (quoting *Heller*'s statement that the Second Amendment protects "'the right of law-abiding, responsible citizens to use arms' for self-defense"); *id.* at 2133 (stating that the historical inquiry should consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense"); *id.* at 2156 (holding that New York's licensing law violates the Second Amendment because "it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms"); *see also Range*, 53 F.4th at 271 (noting that "the [*Bruen*] majority characterized the holders of Second Amendment rights as 'law-abiding' citizens no fewer than fourteen times"). None of those references suggest that the Second Amendment curbs laws restricting the gun rights of non-law-abiding citizens like felons.

Three more aspects of the *Bruen* opinion further confirm that a person's status as non-law-abiding counts at its first, textual step:

15

First, the *Bruen* opinion itself addressed whether the petitioners were law-abiding citizens in the section (III.A) addressing the Second Amendment's textual scope, not the section (III.B) addressing historical tradition. *See* 142 S. Ct. at 2134. The Court observed that the parties did not dispute "that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects." *Id.* (citing *Heller*, 554 U.S. at 580). The Court thus implied that the Second Amendment covered them *because* they were undisputedly law-abiding, responsible citizens.

Second, *Bruen* (along with *Heller*) set contrary presumptions depending on whether a law prevents law-abiding citizens from bearing arms. As noted, *Heller* established that laws disarming felons—and some other gun regulations—are "presumptively lawful." 554 U.S. at 626 & n.26. In contrast, *Bruen* held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," so that laws prohibiting the conduct are presumptively *unlawful*. 142 S. Ct. at 2126. *Bruen*'s presumptive protection could be "[i]n keeping with" *Heller*'s presumption of lawfulness, *see id.*, only if *Heller*'s "presumptively lawful" regulations burden no conduct covered by the amendment's text. In other words, some status-based restrictions of people considered non-law-abiding—including "felons"—are "presumptively lawful" *because* the Second Amendment's text excludes them.

16

Third, *Bruen* explained that its opinion should not "be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes," which "do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right." 142 S. Ct. at 2138 n.9 (citing *Heller*, 554 U.S. at 635); *see also id.* at 2161 (Kavanaugh, J. concurring) ("[T]he 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so."). Those regimes require background checks and set "narrow, objective, and definite standards" meant to ensure "that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Id.* at 2138 n.9 (quotation marks omitted). And those standards uniformly disqualify convicted felons.[2] By indicating that those regimes remain broadly constitutional (unless abused, as when "lengthy wait times … or exorbitant fees deny ordinary citizens their right to public carry"), the Court implied that the Second Amendment's text excludes people (like convicted felons) considered non-law-abiding. Otherwise, the 43 states' many objective criteria

---

[2] *See, e.g.*, Tex. Gov't Code § 411.172(a)(3) (requiring that an applicant for a license to carry a handgun "has not been convicted of a felony"); La. Stat. § 40:1379.3(C)(10) (requiring that an applicant "[n]ot have been convicted of, have entered a plea of guilty or nolo contendere to, or not be charged under indictment or a bill of information for any crime of violence or any crime punishable by imprisonment for a term of one year or greater"); Miss. Code. § 45-9-101(2)(d) (requiring that an applicant "[i]s not ineligible to possess a firearm by virtue of having been convicted of a felony in a court of this state, of any other state, or of the United States without having been pardoned or without having been expunged for same").

17

disqualifying applicants for licenses—and thus preventing them from bearing arms—could survive only through case-by-case, historical inquiries. The Court suggested no such thing.

In *Bruen*'s wake, several courts have interpreted the Second Amendment as covering only law-abiding citizens, and thus excluding convicted felons. The Third Circuit explained that "[t]hose whose criminal records evince disrespect for the law are outside the community of law-abiding citizens entitled to keep and bear arms." *Range*, 53 F.4th at 273. The court "[i]nterpret[ed] the text of the Second Amendment in light of the right's 'historical background,'" *id.* at 282 (quoting *Bruen*, 142 S. Ct. at 2127), surveying historical status-based gun laws from 1600s England through the amendment's ratification, *see id.* at 274–81. It concluded that the Second Amendment's scope "properly excludes those who have demonstrated disregard for the rule of law through the commission of felony and felony-equivalent offenses, whether or not those crimes are violent." *Id.* at 266. The court held that the defendant's felon-equivalent conviction of welfare fraud "placed him beyond the ambit of 'the people' protected by the Second Amendment." *Id.* at 282.[3]

---

[3] Many district courts have likewise rejected post-*Bruen* challenges to § 922(g)(1) on the ground that convicted felons are not law-abiding, responsible citizens whom the Second Amendment covers. *See, e.g.*, *Grinage*, 2022 WL 17420390, at *5 (explaining that *Heller* and *Bruen* "lead[] the Court to conclude convicted felons like Grinage are not included in 'the people' protected by the Second Amendment"); *United States v. Young*, No. CR 22-054, 2022 WL 16829260, at *7 (W.D. Pa. Nov. 7, 2022) ("*Bruen*, *Heller* and *McDonald* dictate that Defendant's alleged conduct does not fall within the scope of the Second Amendment's protections due to his felony

Some courts held the same before *Bruen* in textual analyses that *Bruen* deemed "broadly consistent" with Supreme Court precedent. *See* 142 S. Ct. 2127. Like *Range*, *Medina v. Whitaker* rejected a challenge to § 922(g)(1) as applied to a nonviolent felon. 913 F.3d 152, 157–58 (D.C. Cir. 2019). To determine "the public understanding of the right" when the Second Amendment was ratified, the Court considered the severe punishments felons then faced, as well as evidence that the founders understood the right to exclude "those who were not (or could not be) virtuous members of the community." *Id.* at 158–59. The court held that felons—violent or not—"are not among the law-abiding, responsible citizens entitled to the protections of the Second Amendment." *Id.* at 154; *see also United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (holding that "felons are categorically different from the individuals who have a fundamental right to bear arms"). *Cf. United States v. Bena*, 664 F.3d 1180, 1184 (8th Cir. 2011) (upholding § 922(g)(8) because the Second Amendment excludes those who pose a threat of domestic violence "[a]lthough [they] need not be convicted of an offense involving domestic violence").

A straightforward application of these principles excludes Hickcox from the Second Amendment's coverage. When found in possession of a handgun, Hickcox had pled guilty to, and been convicted of, engaging in

---

drug convictions."); *United States v. Grant*, No. CR 3:22-161-MGL-1, 2022 WL 16541138, at *3 (D.S.C. Oct. 28, 2022) ("By distinguishing non-law-abiding citizens from law-abiding ones, the dicta in *Heller* and *McDonald* clarifies the bounds of the plain text of the Second Amendment.").

organized crime. (ROA.94, 96–97.) Hickcox admitted to committing or conspiring to commit car theft and burglary as a member of a criminal street gang (ROA.97)—a first-degree felony punishable by five to 99 years' imprisonment. *See* Tex. Penal Code §§ 12.04(a) 30.02(c)(2), § 31.07, 71.02(a)(1), (b). He received a six-year prison sentence. (ROA.96.) That conviction "placed [Hickcox] beyond the ambit of 'the people' protected by the Second Amendment." *See Range*, 53 F.4th at 282.

### b.  Section § 922(g)(1) squares with the nation's historical tradition of gun regulation.

Even if the Second Amendment covers convicted felons, § 922(g)(1) is consistent with the right to bear arms because it squares with historical tradition. *Bruen*'s Second Amendment test demands only a relevant historical analogue—a law showing that the founding generation would have seen § 922(g)(1) as permissible. Section 922(g)(1) squares with the longstanding tradition of disarming groups that legislatures determined were dangerous or untrustworthy to obey the law.

**1.** When comparing modern and historical gun laws, courts must often "reason[] by analogy," which "requires a determination of whether the two regulations are relevantly similar." *Bruen*, 142 S. Ct. at 2132 (quotation marks omitted). *Bruen* gave no "exhaustive survey of the features that render regulations relevantly similar" but noted "two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132–33. In other words, the central inquiry is "whether

modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133.

"[A]nalogical reasoning," the Court continued, is not "a regulatory straightjacket." *Id.* at 2133. It "requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Id.*; *see also Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012) ("*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue."). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen*, 142 S. Ct. at 2133.

*Bruen*'s guidance forecloses simply "comparing the modern law under review with the laws of a couple of centuries ago, like a redline comparison in a word processing application." *United States v. Kelly*, No. 3:22-CR-00037, 2022 WL 17336578, at *2 (M.D. Tenn. Nov. 16, 2022). That is "because a list of the laws that *happened to exist* in the founding era is, as a matter of basic logic, not the same thing as an exhaustive account of what laws would have been theoretically *believed to be permissible* by an individual sharing the original public understanding of the Constitution." *Id.* A court conducting *Bruen*'s historical inquiry must not only "consider what earlier legislatures did, but imagine what they could have imagined." *Id.*

**2.** Section 922(g)(1) is relevantly similar to laws disarming dangerous or untrustworthy people. English and American governments have long restricted some people's gun rights to promote public safety. In 1662, for example, England empowered officers to "seize all arms in the custody or possession of any person" whom they "judge[d] dangerous to the Peace of the Kingdom." Militia Act of 1662, 13 & 14 Car. 2, c.3, § 13 (1662); *see Bruen*, 142 S. Ct. at 2140 (calling "particularly instructive" the period of English history "between the Stuart Restoration in 1660 and the Glorious Revolution in 1688" (cleaned up)). At the same time, "the act of 'going armed to terrify the King's subjects' was 'a great offence at the common law'" if committed with "evil intent or malice." *Bruen*, 142 S. Ct. at 2141 (brackets and italics omitted) (quoting *Sir John Knight's Case*, 87 Eng. Rep. 75, 76 (K.B. 1686)). Thus, "by the time of American independence, England had established a well-practiced tradition of disarming dangerous persons—violent persons and disaffected persons perceived as threatening to the crown." Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Firearms*, 20 Wyo. L. Rev. 249, 261 (2020); *see id.* at 259–61 (detailing history).

The American colonies inherited that tradition. "The historical record shows that gun safety regulation was commonplace in the colonies, and around the time of the founding, a variety of gun safety regulations were on the books." *Nat'l Rifle*, 700 F.3d at 200.[4] The colonies (and later

---

[4] *Bruen* abrogated *National Rifle*'s application of means-end scrutiny to the

the states) passed laws that "prohibit[ed] bearing arms in a way that spreads 'fear' or 'terror' among the people." *Bruen*, 142 S. Ct. at 2145. Those statutes "all but codified the existing common law in this regard." *Id.* at 2144 n.14 (citing George Webb, The Office and Authority of a Justice of Peace 92 (1736)). Before the ratification of the Second Amendment in 1791, at least four colonies or states had codified the common-law prohibition on going armed offensively and authorized the arrest of those who did so. *See* 1 Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 52–53 (1869) (1692 statute); Acts and Laws of His Majesty's Province of New Hampshire in New England; with Sundry Acts of Parliament 17 (1771) (1701 statute); 1 Laws of the State of North Carolina, including the Titles of Such Statutes and Parts of Statutes of Great Britain as Are in Force in Said State 131–32 (1821) (1741 statute); Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as Are Now in Force 33 (1794) (1786 statute). Three of those statutes (all but North Carolina) required forfeiture of the offender's weapons. Other states soon followed. *See, e.g.*, A

---

Second Amendment. *See* 142 S. Ct. at 2127 n.4. But this Court was "inclined to uphold the challenged federal laws at step one of [its pre-*Bruen*] analytical framework," *see Nat'l Rifle*, 700 F.3d at 204, which relied on text and history and was "broadly consistent with *Heller*," *see Bruen*, 142 S. Ct. at 2127. Nothing in *Bruen* abrogates this Court's or other courts' textual or historical analyses at "step one" of their pre-*Bruen* frameworks. *See Grinage*, 2022 WL 17420390, at *2 ("[T]o the extent pre-*Bruen* cases relied on textual and historical analysis to find firearms restrictions constitutional, those cases are still good law.").

Compilation of the Statutes of Tennessee of a General and Permanent Nature, from the Commencement of the Government to the Present Time 99–100 (1836) (1801 statute).

Also "noteworthy" among "revolutionary and founding-era gun regulations are those that targeted particular groups for public safety reasons." *Nat'l Rifle*, 700 F.3d at 200. "The earliest firearm legislation in colonial America prohibited Native Americans, Black people, and indentured servants from owning firearms." *Range*, 53 F.4th at 276.[5] And, as the English Parliament had done after the Glorious Revolution, some colonies passed laws disarming Catholics who refused "to take oaths recognizing the legal authority of the Crown, rather than the Pope, over matters of religion." *Id.* at 277. Protestant majorities in those colonies disarmed Catholics because they "viewed Catholics as defying sovereign authority and communal values." *Id.*

During the revolutionary war, "several jurisdictions passed laws that confiscated weapons owned by persons who refused to swear an oath of allegiance to the state or to the nation." *Nat'l Rifle*, 700 F.3d at 200. In *Range*, the Third Circuit described several such laws, including a 1774 Connecticut law and 1777 laws passed by Pennsylvania and Virginia. 53

---

[5] As *Range* observed, these laws are repugnant and would be unconstitutional today; yet they show that "legislatures had the power and discretion to use status as a basis for disarmament, and ... that status-based bans did not historically distinguish between violent and non-violent members of disarmed groups." 53 F.4th at 276 n.18.

F.4th at 278–79; *see also Medina*, 913 F.3d at 159 (explaining that "during the revolution, the states of Massachusetts and Pennsylvania confiscated weapons belonging to those who would not swear loyalty to the United States"); Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 Law & Hist. Rev. 139, 157–60 (2007); Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 506–08 (2004); Joyce Lee Malcolm, To Keep and Bear Arms 140–41 (1994). Like laws disarming Catholics, these oaths laws disarmed not just violent individuals but also those who demonstrated "disrespect for the rule of law and the norms of the civic community." *Range*, 53 F.4th at 279 (citing Churchill, *Gun Regulation*, 25 Law & Hist. Rev. at 158).

Accounts of the ratification debates confirm the founders' belief that "disarming select groups for the sake of public safety was compatible with the right to arms specifically and with the idea of liberty generally." *Nat'l Rifle*, 700 F.3d at 200. "*Heller* identified … as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting 554 U.S. at 604); *see also Range*, 53 F.4th at 280. That report recognized that the government could disarm potentially dangerous or untrustworthy people, stating that "citizens have a personal right to bear

arms 'unless for *crimes committed, or real danger of public injury*.'" *Id.* (emphasis added) (quoting 2 Bernard Schwarz, The Bill of Rights: A Documentary History 662, 665 (1971)). Similarly, Samuel Adams offered an amendment at the Massachusetts convention to ratify the Constitution recommending "that the said Constitution be never construed to authorize Congress … to prevent the people of the United States, *who are peaceable citizens*, from keeping their own arms." Schwarz, The Bill of Rights 674–75, 681 (emphasis added). Thomas Cooley's 1868 treatise, which *Heller* described as "massively popular," 554 U.S. at 616, later explained that some groups were "almost universally excluded" from exercising certain civic rights like gun rights, including "the idiot, the lunatic, and the felon, on obvious grounds." Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union 29 (1st ed. 1868).

"[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) (per curiam) (quoting *Vongxay*, 594 F.3d at 1118 (collecting scholarly sources)); *United States v. Carpio-Leon*, 701 F.3d 974, 979–80 (4th Cir. 2012) (same). The Second Amendment thus incorporates "a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible" and "'does not preclude laws disarming the unvirtuous (i.e. criminals).'"

*Bena*, 664 F.3d at 1183–84 (quoting Don B. Kates, Jr., *The Second Amend-ment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986)); *see also United States v. Rene E.*, 583 F.3d 8, 15–16 (1st Cir. 2009) ("Perhaps the most accurate way to describe the dominant understanding of the right to bear arms in the Founding era is as … limited to those members of the polity who were deemed capable of exercising it in a virtuous manner." (quoting Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second Amendment Scholarship*, 29 N. Ky. L. Rev. 657, 679 (2002))).

The tradition of disarming dangerous or untrustworthy people sup-ports § 922(g)(1)'s restriction on convicted felons. That tradition gives leg-islatures "both authority and broad discretion to determine when individ-uals' status or conduct evince[s] such a threat sufficient to warrant dis-armament." *Range*, 53 F.4th at 282. It thus "permits the disarmament of those who committed felony or felony-equivalent offenses." *See id.* at 285. Section 922(g)(1) is "relevantly similar" to these historical precursors un-der the "two metrics" *Bruen* offered: "how and why the regulations bur-den" Second Amendment rights. *See* 142 S. Ct. at 2132–33. As to "how" § 922(g)(1) operates, like these precursors, it uses an objective criterion—the existence of a felony conviction—to categorically restrict a specific group's gun rights. As to "why," § 922(g)(1) seeks to promote public safety by "keep[ing] firearms away from the persons Congress classified as po-tentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976) (discussing the legislative intent of the 1968 Gun Control

Act, which created the modern-day prohibition in § 922(g)(1)); *see also* S. Rep. No. 82, 75th Cong., 1st Sess. 2 (1937) (explaining that predecessor legislation sought to protect the public by "eliminat[ing] the guns from the crooks' hands, while interfering as little as possible with the law-abiding citizen"). Thus, § 922(g)(1) squares with historical tradition.[6]

### B.  Precedent forecloses Hickcox's claim that § 922(g)(1) exceeds Congress's power under the Commerce Clause.

As Hickcox concedes (Def. Br. 18), precedent forecloses his Commerce Clause argument. *See United States v. Perryman*, 965 F.3d 424, 426 (5th Cir. 2020); *Massey*, 849 F.3d at 266; *United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013).

## II.  Hickcox's sentence is substantively reasonable.

Last, Hickcox's cursory challenge to the reasonableness of his sentence fails. (Def. Br. 12.) This Court reviews a preserved substantive-

---

[6] Here again, many district courts have rejected post-*Bruen* challenges to § 922(g)(1) on the ground that historical tradition supports it. *See, e.g.*, *Grinage*, 2022 WL 17420390, at *7 ("[T]he Government meets its burden by establishing § 922(g)(1) is firmly rooted in this Nation's historical tradition, at common law, of excluding felons from the people protected by the Second Amendment." (quotation marks omitted)); *United States v. Collette*, No. MO:22-CR-00141-DC, 2022 WL 4476790, at *8 (W.D. Tex. Sept. 25, 2022) ("[T]his Nation has a 'longstanding' tradition of exercising its right—as a free society—to exclude from 'the people' those who squander their rights for crimes and violence."); *United States v. Coombes*, No. 22-CR-00189-GKF, 2022 WL 4367056, at *8 (N.D. Okla. Sept. 21, 2022) ("[Section] 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation and the statute is not unconstitutional." (quotation marks omitted)); *United States v. Banuelos*, No. EP-22-CR-00903-FM, 2022 WL 17752205, at *4 (W.D. Tex. Nov. 10, 2022) ("Section 922(g)(1) is consistent with the well-established historical tradition of tying the right to bear arms to the concept of a virtuous citizenry." (quotation marks omitted)).

unreasonableness claim for abuse of discretion. *United States v. Zarco-Beiza*, 24 F.4th 477, 480–81 (5th Cir. 2022). When a "defendant advocates for a sentence shorter than the one ultimately imposed," he informs the district court that he thinks the sentence imposed is greater than needed to achieve the goals of sentencing. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020); *see* Fed. R. Crim. P. 51(b). Hickcox sought a sentence at the low end of the guidelines range, 45 months shorter than the one imposed. (ROA.77.) So he preserved his claim.

This Court's "review for substantive reasonableness is highly deferential, because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors." *United States v. Nguyen*, 854 F.3d 276, 283 (5th Cir. 2017). This Court should not reverse just because it "might reasonably have concluded that a different sentence was appropriate." *Id.* It must instead "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

Although the guidelines should be a starting point, a deviation from them does not alone make a sentence unreasonable. *United States v. Hudgens*, 4 F.4th 352, 358 (5th Cir. 2021). This Court should consider whether the § 3553(a) factors support an above-guidelines sentence based on "the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Redmond*, 965 F.3d 416, 422 (5th Cir. 2020). "A non-Guidelines sentence unreasonably fails to reflect the

[§ 3553(a) factors] where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Nguyen*, 854 F.3d at 283.

Hickcox claims neither that the district court ignored an important factor nor that it relied on an irrelevant or improper one. He argues only that the court lacked an "adequate reason" to sentence him "far in excess of" the 18-to-24-month guidelines range. (Def. Br. 12.) But the court articulated ample case-specific reasons for the sentence. It recognized that this is not "just a basic, run-of-the-mill" felon-in-possession case but that Hickcox created a grave risk of death or serious injury. (ROA.82–83.) By combining drug use with a loaded gun, Hickcox wound up in a "delusional" state, shooting the gun repeatedly inside an occupied multifamily apartment building—and risking the lives of everyone nearby. (ROA.82–83, 88–89, 93–94.) Hickcox then assaulted Martinez and "punch [her] multiple times." (ROA.93.)

The sentencing transcript thus shows that the district court not only stated that it considered the § 3553(a) factors "but indeed analyzed them." *See Nguyen*, 854 F.3d at 284. The felon-in-possession guideline accounts for none of these unique aggravators. *See* U.S.S.G. § 2K2.1. So the court was well within its discretion to conclude that a 63-month sentence was needed considering the crime's unusual nature and circumstances, as well as the need for the sentence to reflect the seriousness of the crime, promote

respect for the law, provide just punishment, and protect the public. (ROA.83.) *See* 18 U.S.C. § 3553(a)(1), (2)(A), (2)(C).

Nor does the extent of the variance make the sentence unreasonable. The 63-month sentence reflects a 263-percent increase over the top of the guidelines range. This Court has affirmed similar variances when, as here, the district court articulated § 3553(a) factors supporting the sentence. *See, e.g.*, *Redmond*, 965 F.3d at 423 (affirming a 286-percent variance over the top of the guidelines range); *United States v. Diehl*, 775 F.3d 714, 726 (5th Cir. 2015) (229-percent variance); *United States v. Smith*, 417 F.3d 483, 490–93 (5th Cir. 2005) (293-percent variance). It should do the same here.

## Conclusion

This Court should affirm Hickcox's conviction and sentence.

Respectfully submitted,

Jaime Esparza
United States Attorney

*/s/ Charles E. Fowler, Jr.*
Charles E. Fowler, Jr.
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on January 9, 2023, I filed this brief through this Court's electronic case-filing system, which will serve it on all registered counsel.

*/s/ Charles E. Fowler, Jr.*
CHARLES E. FOWLER, JR.
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

I certify that

1. this brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,056 words, excluding the parts exempted by Rule 32(f); and

2. this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Office Word 365 in size 14 Calisto MT font.

Dated: January 9, 2023

*/s/ Charles E. Fowler, Jr.*
CHARLES E. FOWLER, JR.
Assistant United States Attorney